James E. Cecchi
**CARELLA, BYRNE, CECCHI,**
**OLSTEIN, BRODY & AGNELLO P.C.**
5 Becker Farm Rd.
Roseland, NJ 07068
Telephone: (973) 994-1700
JCecchi@carellabyrne.com

Steve W. Berman
Thomas E. Loeser
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Ste. 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com
Email: toml@hbsslaw.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL STEWART, BRIAN ROEDER, LORENZO HAMILTON, BEN REHKEMBER, ANN BRUMBACK, AMANDA MCAVOY, and KAREN RYDER, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> SAMSUNG ELECTRONICS AMERICA, INC., and SAMSUNG ELECTRONICS CO., LTD., <br><br> Defendants. | Civil Action No. _____ <br><br> **COMPLAINT and** <br> **DEMAND FOR JURY TRIAL** |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     PARTIES ..............................................................................................................4

        A.      Plaintiffs ...................................................................................................4

                1.      Michael Stewart (Alabama) ...........................................................4

                2.      Brian Roeder (California) ..............................................................5

                3.      Lorenzo Hamilton (Florida) ..........................................................5

                4.      Ben Rehkember (Illinois)...............................................................5

                5.      Ann Brumback (Iowa) ...................................................................6

                6.      Amanda McAvoy (Massachusetts) ................................................6

                7.      Karen Ryder (South Carolina) .......................................................6

        B.      Defendants ................................................................................................7

                1.      Samsung Electronics America, Inc. ...............................................7

                2.      Samsung Electronics Co., Ltd. ......................................................7

III.    JURISDICTION AND VENUE ............................................................................7

IV.     FACTUAL ALLEGATIONS COMMON TO ALL COUNTS..............................8

        A.      Samsung Mobile Devices .........................................................................8

        B.      Samsung's Performance Representations .................................................10

        C.      Samsung's GOS App Throttling...............................................................16

V.      CLASS ACTION ALLEGATIONS .....................................................................19

VI.     CAUSES OF ACTION.........................................................................................24

        A.      Claims Brought on Behalf of the Nationwide Class................................24

COUNT I  FRAUD.........................................................................................................24

COUNT II  FRAUD BY CONCEALMENT (COMMON LAW) (ALLEGED BY ALL PLAINTIFFS ON BEHALF OF THE NATIONWIDE CLASS OR, ALTERNATIVELY, THE STATE SUBCLASSES) ........................................................28

COUNT III  BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING (ALLEGED BY ALL PLAINTIFFS ON BEHALF OF THE NATIONWIDE CLASS OR,  ALTERNATIVELY, THE STATE SUBCLASSES) ...........................................................................................31

COUNT IV  UNJUST ENRICHMENT / QUASI-CONTRACT ................................32

    B.      Claims Brought on Behalf of the Alabama Subclass ............................33

COUNT V  VIOLATIONS OF THE ALABAMA DECEPTIVE TRADE PRACTICES ACT (ALA. CODE §§ 8-19-1, *ET SEQ.*)....................................33

    C.      Claims Brought on Behalf of the California Subclass ..........................37

COUNT VI  VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.*)...............................37

COUNT VII  VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT (CAL. CIV. CODE §§ 1750, *ET SEQ.*)................................40

COUNT VIII  VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING LAW (CAL. BUS. & PROF. CODE §§ 17500, *ET SEQ.*)...............................44

    D.      Claims Brought on Behalf of the Florida Subclass................................46

COUNT IX  VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (FLA. STAT. § 501.201, *ET SEQ.*) ....................46

    E.      Claims Brought on Behalf of the Illinois Subclass................................49

COUNT X  VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT (815 ILCS 505/1, *ET SEQ.*)....................49

    F.      Claims Brought on Behalf of the Iowa Subclass ..................................53

COUNT XI  VIOLATION OF IOWA PRIVATE RIGHT OF ACTION FOR CONSUMER FRAUDS ACT IOWA CODE § 714H.1, *ET SEQ.* ...................53

    G.      Claims Brought on Behalf of the Massachusetts Subclass ...................55

COUNT XII  VIOLATION OF THE MASSACHUSETTS CONSUMER PROTECTION LAW MASS. GEN. LAWS, CH. 93A (PLAINTIFF INDIVIDUALLY AND ON BEHALF OF THE MASSACHUSETTS SUBCLASS)..................................................................................................55

      H.      Claims Brought on Behalf of the South Carolina Subclass ...................................58

COUNT XIII  VIOLATIONS OF THE SOUTH CAROLINA UNFAIR TRADE
      PRACTICES ACT (S.C. CODE ANN. §§ 39-5-10, *ET SEQ.*) .........................................58

PRAYER FOR RELIEF ................................................................................................61

DEMAND FOR JURY TRIAL ....................................................................................62

Michael Stewart, Brian Roeder, Lorenzo Hamilton, Ben Rehkember, Ann Brumback, Amanda McAvoy, and Karen Ryder ("Plaintiffs") bring this class action suit individually and on behalf of all others similarly situated against Defendants Samsung Electronics America, Inc., and Samsung Electronics Co., Ltd. (referred to herein collectively as "Defendants" or "Samsung") for the design, manufacturing, marketing, and sale of various smartphone models containing the Game Optimizing Service ("GOS") app, including, but not limited to, models and versions of the Galaxy S10, S20, S21, and S22, and versions designated as "FE," "Ultra," "Plus," or the like (collectively, "Devices"). Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves which are based on personal knowledge.

## I.      INTRODUCTION

1.      A consumer product company that markets its products based on third-party benchmark testing comparing its products to its competitors' products must produce products that perform as well in the real world as they do in the benchmark tests. But Samsung apparently believes that rule does not apply to it. Knowing that its devices cannot perform as well as its competitors while maintaining safe operating temperatures and adequate battery life, it cheats the tests. It puts cheating software on its devices that allow benchmark testing applications to run at high speed, while it throttles the speed and performance of every day applications in order to maintain safe operating temperatures and preserve battery life. As a result, these devices fraudulently test at high performance rates that consumers will never experience with real-world applications. This lawsuit aims to put a stop to Samsung's benchmark fraud and level the playing field.

2.      This is a class action suit against Defendants for the design, manufacturing, marketing, and sale of Samsung Devices which engage in "benchmark cheating." Plaintiffs allege

that the Samsung Devices at issue contain a mobile application ("app")[1] called Game Optimizing Service ("GOS") that artificially and selectively limits—or "throttles"—access to the Devices' processing power and other resources, purportedly with the intention of preventing overheating and extending battery life of the Devices. Specifically, Samsung has programmed these Devices to run at faster than normal speeds (or higher speeds than apps operating in the real world) when they detect certain "benchmarking" apps—i.e., performance-measuring tools used by reviewers and consumers to test and compare the speed and performance of smartphones and tablets.

3.      Samsung's deception is quite simple: to remain competitive, Samsung promises to deliver *both* better, faster performance and better, longer battery life at safe operating temperatures. However, knowing it cannot deliver as promised, Samsung intentionally programmed its Devices to cheat benchmark apps, and to create false perceptions regarding the speed, performance, and battery life of these Devices. Samsung's throttling manipulation was intended to address a defect in the design of its Devices: the Devices' batteries lacked the capacity and power to keep up with the demands placed upon them by Samsung's hardware and software (hereafter, "the Defect").

4.      Samsung knew that publications and review sites regularly use benchmarking apps to review and evaluate new devices and to compare those devices to competing or predecessor devices.

5.      Samsung also knew that if it artificially boosted the performance of its devices when running benchmarking apps, reviewers and the public would falsely believe that the Devices were similarly as fast in real-world situations. In reality, the processors in the Devices run at a

---

[1] An "app" is a computer program or software application designed to run on a mobile device such as a phone, tablet, or watch.

lower speed when the devices are performing real-world tasks instead of running benchmarking apps—otherwise, the Device's battery life would be diminished and/or the device might overheat.

6.      Samsung intentionally cheated on benchmarking apps to create a false perception regarding the speed and performance of the Devices, to thereby increase the demand for its new devices, and to support a high price-point for these devices—all to the detriment of the buying public.

7.      Samsung engaged in secretly "throttling" the performance of apps on its smartphones. That is, Samsung has programmed the Devices to limit access to their fastest processing cores for numerous popular applications, causing slowdown in typical workloads such as web browsing and gaming. In turn, Samsung was able to advertise its Devices as achieving significant speeds and high-level performance, while maintaining ample battery life. However, the advertised benchmark results are useless for the user's experience, as applications on Samsung's smartphones are secretly throttled by Defendants.

8.      Consequently, based on Samsung's representations, consumers have been led to believe that the Devices are much faster and more powerful than they perform. This means that, in light of the Defect, consumers are not getting the full advertised performance of their phones, and are caused to purchase phones they otherwise would not have purchased and/or are paying a significant price premium for characteristics—i.e., speed, power, and performance—that they are not receiving.

9.      Samsung is well aware that publications and review sites regularly use benchmarking apps to review and evaluate new devices and to compare competing or predecessor devices, and has a history of seeking to circumvent benchmarking tests. Indeed, in February 2014, a class action lawsuit was initiated against Samsung Electronics America, Inc. (as well as since-

absorbed affiliate Samsung Telecommunications America, LLC) alleging a form of consumer deception inverse to the instant allegations—that Samsung programmed its Devices to artificially increase speed when they detect certain benchmarking apps. Furthermore, the lawsuit alleged that Samsung intentionally cheated on benchmarking apps to create a false perception regarding the speed and performance of its Devices, to thereby increase the demand and support a high price-point for its Devices.[2] In or about September 2020, a settlement was reached to resolve the claims that Samsung engaged in misleading smartphone speed advertisements.

10.     Although Samsung has changed its method, its efforts to falsely portray the attributes of its Devices by way of benchmark manipulation have continued.

11.     Samsung's actions and omissions violate well-established legal and statutory duties it owed to Plaintiffs and all other similarly situated United States consumers.

12.     Plaintiffs bring this class action on behalf of themselves and all similarly situated consumers for actual and statutory damages, as well as punitive damages and equitable relief to fully redress the vast harm Samsung's wrongful acts have unleashed on United States consumers.

## II.     PARTIES

### A.     Plaintiffs

#### 1.     Michael Stewart (Alabama)

13.     Plaintiff Michael Stewart ("Plaintiff Stewart") is a domiciled Alabama citizen, residing in Ozark, Alabama.

14.     In or about May 2020, Plaintiff Stewart purchased a new Samsung Galaxy S20.

---

[2] *Norcia v. Samsung Telecommunications America, LLC and Samsung Electronics America, Inc.*, No. 3:14-cv-00582 (N.D. Cal.).

15.     Plaintiff Stewart reviewed and relied upon marketing materials and advertisements concerning the Samsung Galaxy S20 prior to purchasing it. None of the representations received by Plaintiff Stewart contained any disclosure relating to the GOS app.

### 2.     Brian Roeder (California)

16.     Plaintiff Brian Roeder ("Plaintiff Roeder") is a domiciled California citizen, residing in Santa Barbara, California.

17.     In or about January 2022, Plaintiff Roeder purchased a new Samsung Galaxy S21 FE.

18.     Plaintiff Roeder reviewed and relied upon marketing materials and advertisements concerning the Samsung Galaxy S21 FE prior to purchasing it. None of the representations received by Plaintiff Roeder contained any disclosure relating to the GOS app.

### 3.     Lorenzo Hamilton (Florida)

19.     Plaintiff Lorenzo Hamilton ("Plaintiff Hamilton") is a domiciled Florida citizen, residing in Ft. Lauderdale, Florida.

20.     In or about December 2020, Plaintiff Hamilton purchased a new Samsung Galaxy S20+.

21.     Plaintiff Hamilton reviewed and relied upon marketing materials and advertisements concerning the Samsung Galaxy S20+ prior to purchasing it. None of the representations received by Plaintiff Hamilton contained any disclosure relating to the GOS app.

### 4.     Ben Rehkember (Illinois)

22.     Plaintiff Ben Rehkember ("Plaintiff Rehkember") is a domiciled Illinois citizen, residing in Breese, Illinois.

23.     In or about January 2020, Plaintiff Rehkember purchased a new Samsung Galaxy S20+.

24.     Plaintiff Rehkember reviewed and relied upon marketing materials and advertisements concerning the Samsung Galaxy S20+ prior to purchasing it. None of the representations received by Plaintiff Rehkember contained any disclosure relating to the GOS app.

**5.     Ann Brumback (Iowa)**

25.     Plaintiff Ann Brumback ("Plaintiff Brumback") is a domiciled Iowa citizen, residing in Muscatine, Iowa.

26.     In or about March 2021, Plaintiff Brumback purchased a new Samsung Galaxy S20+.

27.     Plaintiff Brumback reviewed and relied upon marketing materials and advertisements concerning the Samsung Galaxy S20+ prior to purchasing it. None of the representations received by Plaintiff Brumback contained any disclosure relating to the GOS app.

**6.     Amanda McAvoy (Massachusetts)**

28.     Plaintiff Amanda McAvoy ("Plaintiff McAvoy") is a domiciled Massachusetts citizen, residing in East Taunton, Massachusetts.

29.     In or about November 2019, Plaintiff McAvoy purchased a new Samsung Galaxy S10+.

30.     Plaintiff McAvoy reviewed and relied upon marketing materials and advertisements concerning the Samsung Galaxy S10+ prior to purchasing it. None of the representations received by Plaintiff McAvoy contained any disclosure relating to the GOS app.

**7.     Karen Ryder (South Carolina)**

31.     Plaintiff Karen Ryder ("Plaintiff Ryder") is a domiciled South Carolina citizen, residing in Aiken, South Carolina.

32.     On April 13, 2020, Plaintiff Ryder purchased a new Samsung Galaxy S20.

33.     Plaintiff Ryder reviewed and relied upon marketing materials and advertisements concerning the Samsung Galaxy S20 prior to purchasing it. None of the representations received by Plaintiff Ryder contained any disclosure relating to the GOS app.

**B.     Defendants**

**1.     Samsung Electronics America, Inc.**

34.     Defendant Samsung Electronics America, Inc., the designer, manufacturer, and vendor of Samsung smartphones, is a corporation existing under the law of the State of New York, headquartered at 85 Challenger Road, Ridgefield Park, New Jersey 07660, and a subsidiary of Samsung Electronics Co., Ltd. Defendant Samsung Electronics America, Inc. regularly conducts business in this District and throughout the United States.

**2.     Samsung Electronics Co., Ltd.**

35.     Defendant Samsung Electronics Co., Ltd., is a corporation existing under the laws of the Republic of Korea, headquartered at 129 Samsung-ro, Yeongtong-gu Suwon, Gyeonggi, 16677, Republic of Korea, and is the parent company to Samsung Electronics America, Inc. Defendant Samsung Electronics Co., Ltd., regularly conducts business in this District and throughout the United States.

36.     Defendants Samsung Electronics America, Inc., and Samsung Electronics Co., Ltd., are collectively referred to herein as "Defendants" or "Samsung."

### III.     JURISDICTION AND VENUE

37.     This Court has personal and subject matter jurisdiction over all causes of action asserted herein.

38.     The Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship

from Defendants, there are more than 100 class members, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs.

39.     This Court has personal jurisdiction over Samsung by virtue of Samsung being headquartered in this District, Samsung transacting and doing business in this District, and because Samsung intentionally availed itself of the laws of New Jersey by transacting a substantial amount of business throughout the State and this District. Samsung has engaged in statutory violations and common law tortious conduct in New Jersey and in this District.

40.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District. Samsung is headquartered in this District and transacts affairs in this District.

## IV.     FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

### A.     Samsung Mobile Devices

41.     Samsung Telecommunications and Samsung Electronics are part of the multinational Samsung Group conglomerate, which is headquartered in Seoul, South Korea. The Samsung Group has subsidiaries across widely varied industries, including shipbuilding, construction, insurance, and aerospace as well as consumer electronics. Samsung Electronics Co. Ltd., the parent of Defendant Samsung Electronics, consists of the following business divisions that operate independently. The Information Technology & Mobile Communications Division, which manufactures and sells smart mobile devices, network systems, and computers and the Device Solutions Division, predominantly manufactures and sells products such as DRAM and NAND products, mobile application processors, and camera sensor chips.

42.     According to statistics retrieved from Statista.com,[3] the smartphone market in the United States is one of the world's largest, with more than 290 million smartphone users. In line with the overall growth of the smartphone market worldwide, the smartphone penetration rate in the United States has continuously risen over the past several years, reaching 85 percent in February 2021. Apple and Samsung are the market leaders in the United States smartphone market and, as of 2021, Apple was the smartphone sales share leader. Samsung smartphones, which operate on the Google Android operating system, are second with 27.6% of U.S. smartphone subscribers.

43.     The following table depicts Samsung Devices impacted by GOS benchmark manipulation, along with respective announcement and release dates, and approximate retail price (prices fluctuate based on various circumstances, such as where the consumer purchases the device directly from Samsung or from a third party, where sold by a wireless services provider in conjunction with a service contract, etc.):

| Samsung Device | Date Announced | U.S. Release Date | Approx. Retail Price |
|---|---|---|---|
| Galaxy S10 | February 20, 2019 | March 8, 2019 | $799.00 |
| Galaxy S10+ | February 20, 2019 | March 8, 2019 | $899.00 |
| Galaxy S10e | February 20, 2019 | March 8, 2019 | $649.00 |
| Galaxy S20 | February 11, 2020 | March 6, 2020 | $999.00 |
| Galaxy S20+ | February 11, 2020 | March 6, 2020 | $1,199.99 |
| Galaxy S20 Ultra | February 11, 2020 | March 6, 2020 | $1,399.99 |
| Galaxy S21 | January 14, 2021 | January 29, 2021 | $799.00 |
| Galaxy S21+ | January 14, 2021 | January 29, 2021 | $999.00 |
| Galaxy S21 Ultra | January 14, 2021 | January 29, 2021 | $1,199.99 |
| Galaxy S21 FE | January 3, 2022 | January 11, 2022 | $699.99 |
| Galaxy S22 | February 9, 2022 | February 25, 2022 | $799.00 |
| Galaxy S22+ | February 9, 2022 | February 25, 2022 | $999.00 |
| Galaxy S22 Ultra | February 9, 2022 | February 25, 2022 | $1,199.00 |

[3] https://www.statista.com/topics/2711/us-smartphone-market/#dossierKeyfigures.

The above list of impacted Devices is not exhaustive and will be further developed upon discovery.

44.     The scope of the GOS app presence—including whether the app was pre-installed to the device, available for voluntary download, or a forced update to the Device, and whether the app is removable or non-removable—is believed to vary based on the generation of the Samsung Device. Upon information and belief, GOS was pre-installed on some Galaxy S21 and older-model Devices, and was pre-installed and is non-removable on the recently released Galaxy S22.

**B.     Samsung's Performance Representations**

45.     The market for smartphones and tablets is currently dominated by devices running on the Android operating system ("OS") developed by Google, and Samsung is one of several manufacturers that make and market devices running on the Android OS.

46.     The OS of a smartphone or tablet largely dictates the experience for the user of the device. Consequently, because the Android OS is used by multiple device manufacturers (unlike Apple's proprietary iOS, for example), Samsung cannot simply rely on the OS as a point of differentiation to drive sales. Instead, in order to gain and keep market share and revenue, Samsung must differentiate its Android OS devices from all the other Android OS devices in the marketplace.

47.     Samsung attempted to accomplish this through a scheme designed to mislead reviewers and the public about the speed, performance, and battery life of its Devices.

48.     Samsung is well aware that, in order to remain competitive with competitors such as Apple, its Devices must get increasingly faster and more powerful, while maintaining adequate battery life. Samsung is also well aware that benchmark testing is the means by which the speed of its Devices are measured and compared to Apple's iPhone as well as other Android smartphones.

49.     "Benchmark" apps are programs or applications for smartphones and tablets that run a set of standardized tests and trials in order to assess device performance. By design, running the same benchmark app on different devices allows one to assess the relative performance of the different devices—the device that completes the tests and trials more quickly receives a higher score from the benchmarking app than the slower device. Popular benchmark apps for Android OS mobile devices include Geekbench, 3DMark, PCMark, Quadrant, Antutu, CPDT, Linpack, Androbench, and GFXBench. When new mobile devices are released, reviewers commonly use benchmark apps to compare the devices both to their predecessor devices and to the competition.

50.     Samsung's Devices are commonly perceived as being vastly outperformed by Apple in benchmark testing. Consequently, through benchmark manipulation, and the false representations of performance derived therefrom, Samsung caused false and misleading information to proliferate.

51.     By artificially manipulating the performance of the Devices on benchmark tests, Samsung has falsely represented the performance of its phones relative to those of its competitors. Samsung has taken these actions knowing that the benchmarking manipulations would result in false information being communicated to consumers, and that this false information would influence their buying decisions.

52.     Samsung intentionally misled the public by misrepresenting the performance capability of its Devices and artificially boosting performance during benchmark testing. Samsung knew that publications and review sites regularly use benchmarking apps to review and evaluate new devices and to compare competing devices. Samsung also knew that if it artificially boosted the performance of its devices when running benchmarking apps, reviewers and the public would falsely believe that the Devices were comparatively faster than competing devices in real-world

situations. In reality, the processors run at a lower speed and the artificial performance boost disappears when the devices are performing real-world tasks instead of running benchmarking apps.

53.    Samsung made false representations directly to consumers in promising to deliver both better performance and better, longer battery life—Samsung knew it could not deliver both to consumers, so it chose to sacrifice (without disclosing to those consumers) performance in the form of its throttling manipulation.

54.    Moreover, in manipulating the benchmark performance of the Devices, Samsung effectively made false representations to persons who ran benchmarking apps on the Devices, and it did so with the knowledge and/or intent that such false representations would be passed on to consumers and that it would influence their purchase decisions. The false statements that Samsung made through benchmark manipulations were passed on to the consumers through reviews published prior to the launch of the Devices in the United States.

55.    Notwithstanding, Samsung has not kept pace with the performance output of the iPhone. For example, according to a January 18, 2022 review published by *Tom's Guide*, a publication that provides technology product reviews and picks, and "help[s] you decide what tech to buy":

> In our benchmark testing, though, the S21 can't match the iPhone 12. For example, Apple's A14 Bionic in the iPhone 12 scored an impressive multicore score of 3,859 in Geekbench 5. The S21, meanwhile, topped out at 3,302. In our Adobe Premiere Rush test, where a 4K video is transcoded to 1080p, the Galaxy S21 completed the test in 1 minute and 3 seconds. The iPhone did the same task in a blistering 26 seconds.[4]

---

[4] https://www.tomsguide.com/news/samsung-galaxy-s21-vs-iphone-12-which-phone-wins.

56.    As depicted below, Benchmark app Geekbench performed a comparison between the Samsung Galaxy S21 Ultra 5G and the iPhone 14,3. The benchmark comparison demonstrates respective Single-Core Scores of 1065 and 1738 between the Samsung Device and the iPhone, a difference of 61.3%, and respective Multi-Core Scores of 3186 and 4766, a difference of 66.8%.[5]



57.    Knowing that consumers seek speed, power, and battery life in selecting a smartphone, Samsung heavily targets these attributes in its marketing efforts.[6] In Samsung's Official Introduction Films for the Galaxy S22 Ultra,[7] it boasts "welcome to the epic standard of

---

[5] The GeekBench scores have been split into Single and Multi-Core categories. The Single-Core score is more relevant for games and applications that are lightly threaded, meaning they rely on a single core to process many—but not all—instructions. Multi-Core scores are more relevant for games and applications that are heavily threaded, meaning they distribute their instructions between multiple cores.

[6] As an example, per Samsung's 2021 Half-Year Financial Report (available at: https://images.samsung.com/is/content/samsung/assets/global/ir/docs/2021_Half_Year_Report.pdf), Samsung spent over $2 billion ($2,697,575 "in millions of Korean won," divided by approximate current exchange rate of $1.00 U.S. to 1,220 South Korean won) on advertising during the first six months of 2020 alone. As part of its marketing efforts, Samsung signed international music superstars "BTS" to promote its Galaxy products. BTS' video advertisements (e.g., https://www.youtube.com/watch?v=Pii224aV-jY) have generated millions of views on YouTube.

[7] https://www.youtube.com/watch?v=2Jdpwb_0F5w; https://www.youtube.com/watch?v=VYLzOakff2g.

smartphones." According to Samsung, the Device has "the fastest chip ever on Galaxy," "a 4nm processor, the fastest on Galaxy, with a 73% faster NPU," "fuels a long-lasting battery that can go beyond a day on a single 45W super-fast charge," and "breaks the rules of what a smartphone can do."

58.    Samsung touts its Galaxy S22 and S22+[8] as having its "fastest processor ever." Per its website, Samsung claims "[w]hether you're vlogging your day, gaming all night or simply scrolling your feed, the 4nm processor makes for an incredibly smooth experience." In regard to the product's battery, Samsung states, "Galaxy S22 is powered by a 3700mAh (typical) battery, and Galaxy S22+ by a 4500mAh (typical) battery.30. Both intelligently adapt to how you use your phone to make sure that it outlasts the day — and then some."[9]

59.    Samsung's marketing efforts surrounding the Galaxy S22 product line created much anticipation among consumers for the Devices' speed, power, and long-lasting battery. As examples:

- Per an article on PhoneArena.com,[10] "[t]he Galaxy S22 Ultra is the latest super-phone vying for the top spot on the shelves and in your pocket. Lauded as the next best thing to come out of the Korean peninsula since kimchi, this phone acts as the spiritual successor of the Note lineup in everything but name, and as such, comes loaded with Samsung's best tech to date."

- Per a review of the S22 Ultra published on SlashGear.com,[11] "[u]nsurprisingly, Qualcomm's newest silicon and 12GB of memory in my review handset proved to be every bit as fast as you'd hope. No lag, no slowdown. That's good, obviously, but it also feels like

---

[8] https://www.samsung.com/us/smartphones/galaxy-s22/.

[9] The statement contains a footnote which states, "Based on average battery life under typical usage conditions. Average expected performance based on typical use. Actual battery life depends on factors such as network, features selected, frequency of calls, and voice, data, and other application usage patterns."

[10] https://www.phonearena.com/reviews/Samsung-Galaxy-S22-Ultra-vs-Google-Pixel-6Pro_id5279.

[11]    https://www.slashgear.com/772111/samsung-galaxy-s22-ultra-review-everything-is-not-foreverybody/.

table-stakes at this point in the market." Further, "[t]he 5,000 mAh battery in the Galaxy S22 Ultra is a beast. Getting through a full day is no problem at all, even with plenty of photography. For topping it up, there's 45W wired and 15W wireless support, though — beyond the USB-C cable in the box — Samsung leaves you to your own devices to supply the charger itself."

▪ Per a review published on DigitalTrends.com,[12] "[u]nquestionably, the Samsung Galaxy S22 Ultra is the most multipurpose smartphone you can buy today, and regardless of what you want to do with your phone today, tomorrow, or in two years' time, its astonishing ability and varied feature set will have you covered. There's real value in buying a phone so capable, as although the initial outlay for the Galaxy S22 Ultra is high, there won't be any real need to replace it for the foreseeable future."

▪ Per a review published on Engadget.com[13], the "Galaxy S22 line is one of the first phones to feature Qualcomm's new Snapdragon 8 Gen 1 chip, which when combined with 8GB of RAM and 128GB of storage (or 256GB if you opt for the upgrade) results in a phone that feels blisteringly fast. In my experience, there isn't really anything you can throw at the S22 that makes it even sweat, aside from stuff like hardcore multitasking when connected to an external monitor via Samsung Dex (which is still very much a thing)."

60.    Articles clearly show speed and performance are important, and data from benchmarking apps are relied on by media and consumers. For example, MacRumors recently released an online article titled, "iPhone 13 is Significantly Faster Than Samsung's New Galaxy S22 in Benchmarks."[14] The article refers to the benchmark testing conducted by PCMag, wherein "the Galaxy S22 Ultra with Qualcomm's Snapdragon 8 Gen 1 processor achieved a multi-core score of 3,433, compared to 4,647 for the iPhone 13 Pro Max with Apple's A15 Bionic chip. Based on these results, the iPhone 13 Pro Max is around 35% faster than the Galaxy S22 Ultra for CPU performance."

---

[12] https://www.digitaltrends.com/mobile/samsung-galaxy-s22-ultra-review/.
[13] https://www.engadget.com/samsung-galaxy-s-22-review-sprucing-up-a-solid-foundation-151522033.html.
[14] https://www.macrumors.com/2022/02/11/samsung-galaxy-s22-vs-iphone-13-benchmark/.

61.     On February 11, 2022, PCMag released an online article titled, "Galaxy S22 Benchmarked: Apple Still Beats Samsung,"[15] which states, "[w]hile the Samsung Galaxy S22 is the most powerful Android phone we've seen so far, it benchmark results fall behind Apple's iPhone 13 Pro Max." Interestingly, the article notes, "[w]hile running benchmarks, the phone quickly became warm, and as soon as it became warm it returned much lower results. A Geekbench result of 1,232 became 802 with a warm phone, and GFXBench result of 28fps became 19fps."

## C.     Samsung's GOS App Throttling

62.     Samsung installs the GOS app in its Galaxy line and other smartphone models prior to delivering the Devices to consumers ("pre-installs"). To the extent that the GOS app is not pre-installed to the Device, the app can be added to Samsung smartphones for free, via software update or through the Galaxy store.[16]

63.     Upon information and belief, the GOS app identifies and evaluates the name of the app that is running and, based on the name of the application, determines whether to throttle down the app's performance. In the event that GOS identifies the app as a benchmarking app, such as 3DMark or Geekbench, it does not throttle the performance—of course, this is beneficial to Samsung in that the benchmarking apps provide an exaggerated evaluation of the Devices' performance. On the other hand, when the consumer attempts to use a non-benchmarking app, the consumer does not receive the full expected performance.

64.     Upon information and belief, users have performed various tests to identify the scope of Samsung's throttling manipulation—simply renaming the app from a benchmark app to an app not recognized as a benchmark app results in a benchmark score of less than half of what

---

[15] https://www.pcmag.com/news/galaxy-s22-benchmarked-apple-still-beats-samsung.
[16] https://galaxystore.samsung.com/prepost/000004017258?appId=com.samsung.android.game.gos&session_id=W_42c8ff54e9c6605545067f84dc314578.

it ran with the correct name. By way of example, on or about February 25, 2022, a YouTube user posted a video depicting how Samsung subjects everyday apps to a limited, throttled performance while benchmark apps are not subjected to throttling. In his test, the YouTube user modified the package name of the "3DMark" benchmark app to "Genshin Impact," one of the apps known to be subject to throttling, and displayed for viewers as depicted in the screenshot below that the renamed package achieved a drastically lower benchmark score and average frame rate.[17]



65.       On or about March 2, 2022, Samsung's benchmark manipulation scam was exposed when Twitter user GaryeonHan and Korean netizens published a list containing 10,000 apps apparently subjected to throttling by Samsung's GOS app.[18] The list of apps throttled by Samsung includes prominent apps like YouTube, SnapChat, Instagram, Netflix, Disney+, Facebook, Twitter, Amazon, Google Keep, TikTok, and Microsoft Office apps. Noticeably absent from the list are benchmarking apps, including 3DMark, Geekbench, PCMark, GFXBench, Antutu, CPDT,

---

[17] https://www.youtube.com/watch?v=Vtt2g3BlwM8.
[18] https://www.androidauthority.com/samsung-gos-throttling-apps3125885/?utm_source=feedly&utm_medium=webfeeds; https://twitter.com/GaryeonHan/status/1499009797035008002?t=MEFGfeHOz85hCHrRibINTQ.&s=19; http://www.mediafire.com/file/4xj5szj0xsczjsv/GOS_app_list.xlsx/file.

and Androbench. By not throttling benchmark apps, the benchmark apps are able to operate at full performance, and Samsung is able to skew user expectations for its Devices' real-world speed and battery life.

66.     As the result of Samsung's benchmark manipulation, benchmark app Geekbench now excludes several of Samsung's Devices, including, but not limited to, Galaxy S20, Galaxy S20+, Galaxy S20 Ultra, Galaxy S21, Galaxy S21+, Galaxy S21 Ultra, Galaxy S22, Galaxy S22+, and Galaxy S22 Ultra. As set forth at GeekBench.com,[19] "[t]he devices listed below [the aforementioned Galaxy smartphones and many other Samsung products] are excluded from the benchmark chart. These devices run Geekbench (and possibly other benchmarks) in an artificial benchmark mode. Other applications do not run in this benchmark mode, which leads to benchmark results that do not correspond to real-world performance."

67.     In response to the throttling controversy and user demand for more control and transparency for throttling, Samsung issued an "apology" of sorts on or about March 4, 2022[20]:

> Our priority is to deliver the best mobile experience for consumers. The Game Optimizing Service (GOS) has been designed to help game apps achieve a great performance while managing device temperature effectively. GOS does not manage the performance of non-gaming apps. We value the feedback we receive about our products and after careful consideration, we plan to roll out a software update soon so users can control the performance while running game apps.

Upon information and belief, Samsung also issued the following announcement:

> We would like to inform you about the Galaxy S22 GOS. We are continuously working to expand user options and provide optimal performance by collecting opinions from customers. The Samsung Galaxy S22 series' GOS (Game Optimizing Service) is preloaded with our app that optimizes CPU and GPU performance to prevent excessive heat during long game play. In order to meet the needs of

---

[19] https://browser.geekbench.com/android-benchmarks/.
[20] https://www.engadget.com/samsung-performance-throttling-update-164530242.html?src=rss.

various customers recently, we plan to implement a SW update that provides a performance priority option in the game booster lab within the game launcher app as soon as possible. We will continue to listen to consumers' opinions and do our best for customer satisfaction and consumer protection. Thank you.

68.   On or about March 9, 2022, in response to public outcry regarding the "benchmark cheating" scandal, Samsung issued the following statement[21]:

The Galaxy S22 series' GOS (Game Optimizing Service) is a built in app that optimizes CPU and GPU performance to prevent excessive heat during long game play. In order to meet the needs of various customers recently, we plan to implement a SW update that provides a performance priority option in the game booster lab in the game launcher app as soon as possible.

## V.   CLASS ACTION ALLEGATIONS

69.   Plaintiffs bring all claims as class claims under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

70.   Plaintiffs bring their claims on their own behalf, and on behalf of the following proposed classes of persons:

- All persons or entities who purchased a Samsung Device containing the GOS app (the "National Class");

- All persons or entities who purchased a Samsung Device containing the GOS app in the State of Alabama (the "Alabama Subclass");

- All persons or entities who purchased a Samsung Device containing the GOS app in the State of California (the "California Subclass");

- All persons or entities who purchased a Samsung Device containing the GOS app in the State of Florida (the "Florida Subclass");

---

[21] https://www.samsungsvc.co.kr/solution/689552.

- All persons or entities who purchased a Samsung Device containing the GOS app in the State of Illinois (the "Illinois Subclass");

- All persons or entities who purchased a Samsung Device containing the GOS app in the State of Iowa (the "Iowa Subclass");

- All persons or entities who purchased a Samsung Device containing the GOS app in the State of Massachusetts (the "Massachusetts Subclass"); and

- All persons or entities who purchased a Samsung Device containing the GOS app in the State of South Carolina (the "South Carolina Subclass").

71.     Plaintiffs reserve the right to modify or amend the definition of the proposed classes before the Court determines whether certification is appropriate.

72.     The National Class, the Alabama Subclass, the California Subclass, the Florida Subclass, the Illinois Subclass, the Iowa Subclass, the Massachusetts Subclass, and the South Carolina Subclass are referred to collectively as the "Classes."

73.     Excluded from the Classes are: the Defendants; any of Defendants' corporate affiliates; any of Defendants' directors, officers, or employees; any person who timely elects to be excluded from any of the Classes; any government entities; and any judge to whom this case is assigned and his or her immediate family, law clerks, and court staff.

74.     The claims for relief asserted herein satisfy the prerequisites for certification as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3):

a.      There are questions of law or fact common to the Classes;

b.      The claims or defenses of the representative parties are typical of the claims or defenses of the Classes;

c.      The representative parties will fairly and adequately protect the interests of the Classes;

d.      The questions of law or fact common to class members predominate over any questions affecting only individual members; and

e.      A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

75.     <u>Numerosity</u>. The Classes are so numerous that joinder of individual members thereof is impracticable. Plaintiffs believe that there are millions of members throughout the United States. The precise number and identities of class members are unknown to Plaintiffs, but are known to Defendants or can be ascertained through discovery, using records of sales, warranty records, and other information kept by Defendants or their agents.

76.     <u>Commonality</u>. Common questions of law and fact exist as to all members of the Classes and, as appropriate, the members of each Subclass. The questions of law and fact common to the Classes include:

i.      Whether Samsung's advertising, marketing, product packaging and benchmark manipulations were untrue, misleading, or reasonably likely to deceive;

ii.     Whether Samsung knew its conduct and statements were false or misleading;

iii.    Whether Samsung's statements, conduct, and/or omissions were material;

iv.     Whether Samsung's conduct violated the state consumer protection statutes cited herein;

v.      Whether Samsung's alleged conduct constitutes the use or employment of an unconscionable commercial practice, deception, fraud, false pretense,

false promise, and misrepresentation within the meaning of the applicable

state consumer fraud statutes;

vi.     Whether Samsung has been unjustly enriched under the applicable state

laws;

vii.    Whether Samsung has violated the implied warranty of merchantability

under the applicable state laws;

viii.   Whether Plaintiffs and class members are entitled to damages, restitution,

disgorgement, equitable relief, or other relief; and

ix.     The amount and nature of such relief to be awarded to Plaintiffs and class

members, including the appropriate class-wide measure of damages for the

Classes.

77.     The determination of the truth or falsity of these and other questions will resolve

an issue that is central to the validity of each one of the claims (depending on the cause of action

asserted) in one stroke. These and other questions will need to be answered in connection with

every class member's claim (depending on the cause of action asserted). These questions will

generate common answers apt to drive the resolution of the litigation.

78.     Typicality. Plaintiffs' claims are typical of the claims of the absent members of the

Classes (and their respective Subclasses) because they arise from the same course of conduct by

Defendants and are based on the same legal theories as do the claims of all other members of each

of their respective Class or Subclass. Moreover, Plaintiffs seek the same forms of relief for

themselves as they do on behalf of absent class members.

79.     Adequacy. Plaintiffs will fairly and adequately protect the interests of the absent

members of the Classes. Because their claims are typical of the respective Class or Subclass that

they seek to represent, Plaintiffs have every incentive to pursue those claims vigorously. Plaintiffs' interests are coincident with, and not antagonistic to, those of the absent members of the Classes. Moreover, Plaintiffs are represented by counsel competent and experienced in the prosecution of class action and, in particular, consumer protection litigation.

80.    <u>Predominance</u>. Certification of the Classes under Rule 23(b)(3) of the Federal Rules of Civil Procedure is appropriate because the questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

81.    <u>Superiority</u>. In addition, class action treatment under Rule 23(b)(3) is a superior method for the fair and efficient adjudication of this controversy. Among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort and expense if numerous individual actions. Furthermore, although the damages suffered by members of each of the proposed Classes are substantial in the aggregate, the damages to any individual member of the proposed Classes would be insufficient to justify individually controlling the prosecution of separate actions against Samsung. The benefits of proceeding on a class-wide basis, including providing injured persons or entities with a method for obtaining redress for claims that might not be practicable to pursue individually, substantially outweigh any potential difficulties in managing this class action.

## VI.    CAUSES OF ACTION

**A.    Claims Brought on Behalf of the Nationwide Class.**

### COUNT I

### FRAUD

82.    Plaintiffs reallege and incorporate the preceding paragraphs as if fully set forth herein.

83.    Plaintiffs bring this cause of action for themselves and on behalf of the Nationwide Classes under the common law of fraud, which is materially uniform in all states.

84.    As described above, Samsung defrauded Plaintiffs and Class Members by knowingly and intentionally misrepresenting to them and to the public at large that its Devices had superior design, security, and quality, with "unmatched" performance.

85.    As described above, Samsung carried out its fraudulent and deceptive conduct through affirmative misrepresentations, omissions, suppressions, and concealments of material fact to Plaintiffs and the Class Members, as well as to the public at large.

86.    These representations were false, as detailed above. Samsung knew that the representations were false and acted with knowledge of their falsity intentionally to induce Plaintiffs and Class members to buy Samsung's Devices, as well as avoid Samsung's warranty obligations, and achieve windfall profits at the expense of Plaintiffs and all Class Members.

87.    Plaintiffs and Class Members had no reasonable means of knowing that Samsung's representations were false and misleading.

88.    Samsung's actions constitute actual fraud and deceit because Samsung did the following with the intent to deceive Plaintiffs and Class Member and to induce them to enter into purchasing Samsung's Devices:

a. Suggesting that the Devices were far superior to anything on the market with unmatched performance, security, and quality, even though it knew this to be not true; and

b. Positively asserting that the Devices were far superior to anything on the market with unmatched performance and quality, in a manner not warranted by the information available to Defendants.

89. Samsung's misrepresentations were material in that they would affect a reasonable consumer's decision to purchase Samsung's Devices. Plaintiffs and Class Members paid a premium for Samsung Devices precisely because they purportedly offered superior quality and performance than anything on the market. Whether Samsung's Devices were defective would have been an important factor in Plaintiffs' and the Class Members' decisions to purchase or obtain Samsung Devices.

90. Samsung's intentionally deceptive conduct induced Plaintiffs and Class Members to purchase Samsung's Devices and resulted in harm and damage to Plaintiffs and Class Members.

91. Plaintiffs believed and relied to their detriment upon Samsung's affirmative misrepresentations. Class members are presumed to have believed and relied upon Samsung's misrepresentations because those facts are material to a reasonable consumer's decision to purchase Samsung Devices.

92. Samsung also fraudulently concealed and suppressed material facts regarding the Devices. Well prior to disclosure to the public, Samsung intentionally manipulated its Devices' benchmark performance, and continued and continues to promote and tout its products as the most secure devices in the world. It knew when it marketed and sold the Devices that the devices were not superior in quality or performance as Samsung claimed. Samsung failed to disclose these facts

to consumers at the time they marketed and sold the Devices. Samsung knowingly and intentionally engaged in this concealment in order to boost sales and revenues, maintain its competitive edge in the industry, and obtain windfall profits.

93.    Plaintiffs and class members had no reasonable means of knowing that Samsung's representations were false and misleading, or that Samsung had omitted to disclose material details relating to the Devices. Plaintiffs and Class Members did not and could not reasonably discover Samsung's concealment on their own.

94.    Samsung had a duty to disclose, rather than conceal and suppress, the full scope and extent of the Devices' performance because:

    a.    Samsung had exclusive or far superior knowledge of its throttling manipulation through the GOS app, and concealment thereof;

    b.    The details regarding its throttling manipulation through the GOS app and concealment thereof were known and/or accessible only to Defendant;

    c.    Samsung knew Plaintiffs and Class Members did not know about Samsung's throttling manipulation through the GOS app and concealment thereof and that the untrained observer would not be able to detect the inherent defects in the Devices; and

    d.    Samsung made representations and assurances about the qualities of the Devices, including statements about the Devices' superior performance and abilities that were misleading, deceptive, and incomplete without the disclosure of the fact that it engaged in throttling manipulation through the GOS app.

95.    These omitted and concealed facts were material because a reasonable consumer would rely on them in deciding to purchase Samsung Devices, and because they substantially reduced the value of the Devices that Plaintiffs and Class Members purchased. Whether Samsung's Devices were defective would have been an important factor in Plaintiffs' and the Class Members' decisions to purchase or obtain the Devices.

96.    Plaintiffs and the Class Members trusted Samsung not to sell them products that were defective.

97.    Samsung intentionally and actively concealed and suppressed these material facts to falsely assure consumers that its Devices were of superior quality and performance level, as represented by Samsung and as reasonably expected by consumers.

98.    Plaintiffs and the class members were unaware of these omitted material facts and would have paid less for the Devices, or would not have purchased them at all, if they had known of the concealed and suppressed facts. Plaintiffs and the Class Members did not receive the benefit of their bargain due to Samsung's fraudulent concealment.

99.    Plaintiffs and Class Members relied to their detriment upon Samsung's reputations, fraudulent misrepresentations, and material omissions in deciding to purchase the Devices.

100.    As a direct and proximate result of Samsung's deceit and fraudulent concealment, including its intentional suppression of the true facts, Plaintiffs and the Classes suffered injury. They purchased Devices of inferior quality and performance, which had a diminished value by reason of Samsung's concealment of, and failure to disclose, the defects.

101.    Plaintiffs and the Classes sustained damages as a direct and proximate result of Samsung's deceit and fraudulent concealment in an amount to be proven at trial.

102.     Samsung's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class Members' rights, with the aim of enriching Defendant, justifying an award of punitive damages in an amount sufficient to deter such wrongful conduct in the future.

## COUNT II

### FRAUD BY CONCEALMENT (COMMON LAW)
### (ALLEGED BY ALL PLAINTIFFS ON BEHALF OF THE NATIONWIDE CLASS OR, ALTERNATIVELY, THE STATE SUBCLASSES)

103.     Plaintiffs and the Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

104.     Plaintiffs bring this claim on behalf of themselves and the Nationwide Class against all defendants. Alternatively, Plaintiffs bring this claim on behalf of themselves and the State Subclasses against all defendants.

105.     As alleged herein, Samsung intentionally concealed, suppressed, and omitted the material fact of the Defect, specifically that the Samsung Devices had the GOS app installed that secretly limited the performance of the Samsung Devices when running everyday apps, while maximizing performance for known benchmark testing apps.

106.     Defendants also misrepresented the speed, performance, battery life, and functionality of the Samsung Devices. These representations were false because, unbeknownst to Class members, the Samsung Devices contained the Defect rendering them less powerful and less functional than reported in benchmark tests.

107.     Samsung's misrepresentations and omissions about the Defect in the Samsung Devices were material because the misrepresentations and omissions alleged herein induced Plaintiffs and the Class members to purchase their Samsung Devices when, had they known about the Defect, they would not have purchased their Devices or they would have paid less for them.

108.     Defendants knew about the Engine Defect before the Samsung Devices were sold due to intentional creation and installation of the GOS software, whose very purpose was to create among the technology press and consumer the false impression that the Samsung Devices were fast, powerful and had long battery life, when in truth and fact, the Devices operated at much lower performance when running every day applications.

109.     Defendants had reason to expect that Plaintiffs and Class members would purchase or lease the Samsung Devices, or spend more money to acquire them, if the Devices operated at high speed and had long battery life. Likewise, Defendants knew that Plaintiffs and Class members would not purchase or lease, or at least pay as much, for the Samsung Devices if they knew they contained the Defect and the deceptive GOS app.

110.     Reasonable consumers, such as Plaintiffs and the Class, would not know about the Defect in the Samsung Devices and that the Devices contained the GOS app that was specifically designed to cheat on the benchmark tests. Plaintiffs and the Class members did not know these facts that were concealed from them by Defendants. Moreover, as ordinary consumers, Plaintiff and the Class members did not, and could not, unravel the deception on their own.

111.     Defendants concealed the truth about the Defect, intending for Plaintiffs and the Class to rely on their misrepresentations and omissions. Plaintiffs and the Class members relied on Samsung's misrepresentations and omissions in choosing to purchase or lease their Samsung Devices, believing them to be fast and powerful, with long running batteries that operated at safe temperatures. Plaintiffs and Class members were reasonable and justified in their reliance on Samsung's representations about the Samsung Devices and omissions about the Defect because Defendants are multinational smart device manufacturers well-versed in the design, manufacture, and service of devices like the Samsung Devices.

112.    Defendants had a duty to disclose the Defect to Plaintiffs and Class members because the true facts about the Defect were known and accessible only to Defendants, and because Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or the Class members unless and until the tech publications discovered Samsung's cheating and banned its devices from their benchmark testing. As alleged herein, Defendants denied and concealed the Defect in the face of consumer complaints. Plaintiffs and Class members did not, and could not, unravel Samsung's deception on their own.

113.    Samsung's omissions were made with knowledge of their falsity, and with the intent that Plaintiffs and the Class Members rely on them.

114.    Plaintiffs and Class members were entitled to rely on Samsung's misrepresentations and omissions because they are purchasers and lessees of Samsung's Samsung Devices, and Defendants have been enriched by the sales of these Devices.

115.    Plaintiffs and the Class members reasonably relied on Samsung's misrepresentations and omissions and suffered injury and monetary damages as a direct and proximate result. Had Defendants not concealed the material facts of the Defect, Plaintiffs and the Class would not have purchased the Samsung Devices or would have paid less for them. Plaintiffs and Class members have also incurred out-of-pocket costs related to the Defect, loss of use of their Samsung Devices, and diminished value in their Devices because of Samsung's fraud and the growing public awareness about the Defect. Accordingly, Defendants are liable to Plaintiffs and the Class for damages in an amount to be proven at trial.

116.    Samsung's acts were committed wantonly, maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the rights Plaintiffs and the Class; and to enrich themselves. Their misconduct warrants an assessment of punitive damages in an amount sufficient

to deter such conduct in the future, and such amount shall be determined according to proof at trial.

## COUNT III

**BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING**
**(ALLEGED BY ALL PLAINTIFFS ON BEHALF OF THE NATIONWIDE CLASS OR, ALTERNATIVELY, THE STATE SUBCLASSES)**

117.    Plaintiffs and the Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

118.    Plaintiffs bring this claim on behalf of themselves and the Nationwide Class against all Defendants. Alternatively, Plaintiffs bring this claim on behalf of themselves and the State Subclasses against all Defendants.

119.    All contracts contain an implied covenant of good faith and fair dealing. The implied covenant of good faith and fair dealing is an independent duty and may be breached even if there is no breach of a contract's express terms.

120.    A contractual relationship existed between Plaintiffs and class members and Defendants. As alleged herein, Defendants were the designers, manufacturers, distributors, and warrantors of the Samsung Devices. Defendants provided Plaintiffs with an express warranty arising from Samsung's one-year warranties, as well as an implied warranty of merchantability in connection with the purchase or lease of their Samsung Devices. Defendants warranted that the Samsung Devices were fit for their ordinary purpose, would pass without objection in the trade as designed, manufactured, and marketed, and were adequately contained, packaged, and labeled.

121.    At all relevant times, Plaintiffs and the Class members adhered to the warranty requirements for their Samsung Devices relevant to the Defect.

122.    Defendants breached the covenant of good faith and fair dealing by, *inter alia*, failing to notify Plaintiffs and Class members of the Defect in the Samsung Devices, and failing

to fully and properly repair this Defect, thereby depriving Plaintiffs and the Class of the benefits under the contract. As a result of Samsung's breach of their duty of good fair and fair dealing, Plaintiffs were monetarily damaged, suffering out of pocket costs related to the Defect, loss of use, and diminution of value in the Samsung Devices. Had Plaintiffs and Class members known about the Defect, they would not have purchased or leased the Devices, or they would have paid less for them.

123.    Defendants acted in bad faith and/or with a malicious motive to deny Plaintiffs and Class members some benefit of the bargain originally intended by the parties, thereby causing them injuries in an amount to be determined at trial.

## COUNT IV

## UNJUST ENRICHMENT / QUASI-CONTRACT

124.    Plaintiffs reallege and incorporates the preceding paragraphs as if fully set forth herein.

125.    Plaintiffs bring this cause of action for themselves and on behalf of the Nationwide Classes under the common law of fraud, which is materially uniform in all states. In the alternative, each Plaintiff brings this claim on behalf of her/himself and the state subclass that they represent.

126.    Plaintiffs bring this claim as an alternative to the contractual warranty claims asserted below or due to Samsung's intentional and deceptive efforts to conceal the defects in the Devices and avoid Samsung's warranty obligations.

127.    Samsung received hundreds of millions—if not billions—in revenue from the sale of the Devices.

128.    This revenue was a benefit conferred upon Samsung by Plaintiffs and the Classes.

129.    Samsung was unjustly enriched through financial benefits conferred upon it by Plaintiffs and the Classes, in the form of the amounts paid to Samsung for the Devices.

130.     Plaintiffs and the Classes elected to purchase the Devices based upon Samsung's misrepresentations, deception, and omissions. Samsung knew and understood that it would and did receive a financial benefit, and voluntarily accepted the same, from Plaintiffs and the Classes when they elected to purchase the defective Devices.

131.     By selecting Samsung's Devices and purchasing them at a premium price, Plaintiffs and the Classes reasonably expected that the Devices would have the unmatched performance and quality promised by Samsung.

132.     Therefore, because Samsung will be unjustly enriched if it is allowed to retain the revenues obtained through falsehoods, deception, and misrepresentations, Plaintiffs and each Class Member are entitled to recover the amount by which Samsung was unjustly enriched at his or her expense.

133.     Accordingly, Plaintiffs, on behalf of themselves and each Class member, seeks damages against Samsung in the amounts by which Samsung has been unjustly enriched at Plaintiffs' and each Class Member's expense, and such other relief as this Court deems just and proper.

**B.     Claims Brought on Behalf of the Alabama Subclass**

<u>**COUNT V**</u>

**VIOLATIONS OF THE ALABAMA**
**DECEPTIVE TRADE PRACTICES ACT**
**(ALA. CODE §§ 8-19-1, *ET SEQ.*)**

134.     Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

135.     Plaintiff Stewart brings this Count on behalf of the Alabama Subclass against Defendants.

136.     Plaintiff, other members of the Subclass, and Defendants, are "persons" as defined by the Alabama Deceptive Trade Practices Act ("Alabama DTPA"). Ala. Code § 8-19-3(5).

Plaintiff, and other members of the Subclass, are "consumers" within the meaning of the Alabama DTPA. Ala. Code § 8-19-3(2). The Samsung Devices are "goods" within the meaning of the Alabama DTPA. Ala. Code § 8-19-3(3). Samsung was and is engaged in "trade or commerce" within the meaning of Ala. Code § 8-19-3(8).

137.    The Alabama Deceptive Trade Practices Act makes unlawful "(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have," "(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another," and "(27) Engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce." Ala. Code § 8-19-5. Samsung has engaged in unfair or deceptive acts or practices that violated the Alabama DTPA, as described above and below, by, among other things, representing that the Samsung Devices have characteristics, uses, benefits, and qualities which they do not have; representing that the Samsung Devices are of a particular standard, quality, and grade when they are not; advertising the Samsung Devices with the intent not to sell them as advertised; and representing that the subject of a transaction involving the Samsung Devices has been supplied in accordance with a previous representation when it has not.

138.    In the course of Samsung's business, it willfully failed to disclose and actively concealed that the Devices were defective, such that normal use of the Samsung Devices would be at speeds and with performance far lower than the benchmark test results Samsung achieved through its cheating app. Accordingly, Samsung engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Samsung Devices.

139. In purchasing or leasing the Samsung Devices, Plaintiff and Subclass members were deceived by Samsung's failure to disclose that normal use of the Samsung Devices would be at speeds and with performance far below the benchmark test results.

140. Plaintiff and the Subclass members reasonably relied upon Samsung's false misrepresentations. They had no way of knowing that Samsung's representations were false and gravely misleading. As alleged herein, Defendants engaged in extremely sophisticated methods of deception. Plaintiff and the Subclass members did not, and could not, unravel Samsung's deception on their own, as Plaintiff and Subclass members were not aware of the defective nature of the Samsung Devices prior to purchase.

141. Samsung's actions as set forth above occurred in the conduct of trade or commerce.

142. Samsung's deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

143. Samsung intentionally and knowingly misrepresented material facts regarding the Samsung Devices with intent to mislead Plaintiff and the Subclass members.

144. Samsung knew or should have known that its conduct violated Alabama law regarding unfair or deceptive acts in trade or commerce.

145. Samsung owed Plaintiff and Subclass members a duty to disclose the truth about the Defect because Defendant:

> a. Possessed exclusive knowledge of the design of the Samsung Devices and the GOS software's intent to cheat the benchmark tests;
>
> b. Intentionally concealed the foregoing from Plaintiff and the Subclass members; and/or

    c.    Made incomplete representations regarding the quality of the Samsung Devices, while purposefully withholding material facts from Plaintiff and the Subclass members that contradicted these representations.

146.    Due to its specific and superior knowledge that the GOS app in the Samsung Devices was intend to obtain false results in benchmark testing, its false representations regarding the quality of the Samsung Devices, and Plaintiff's and Subclass members' reliance on these material representations, Samsung had a duty to disclose to Plaintiff and Subclass members that the Samsung Devices were defective and that Samsung Devices do not have the real-world performance indicated by the benchmark tests. Having volunteered to provide information to Plaintiff and Subclass members, Samsung had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Samsung Devices purchased or leased by Plaintiff and Subclass members. Performance is a material concern to smartphone consumers. Samsung represented to Plaintiff and Subclass members that they were purchasing smartphones that were free from defect, when in fact the smartphones were defective and would not operate at the performance levels indicated by the benchmark tests.

147.    Samsung's conduct proximately caused injuries to Plaintiff and the Subclass members.

148.    Plaintiff and the Subclass members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Samsung's conduct, Plaintiff and the Subclass members overpaid for their Samsung Devices and did not receive the benefit of their bargain, and their Samsung Devices have suffered a diminution in value. These injuries are the direct and natural consequence of Samsung's misrepresentations and omissions.

149.     Samsung's unlawful acts and practices complained of herein affect the public interest as their actions offend public policy and are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

150.     As a direct and proximate result of Samsung's violations of the Alabama DTPA, Plaintiff and the Subclass members have suffered injury-in-fact and/or actual damage.

151.     Pursuant to the Alabama DTPA, Samsung is liable to Plaintiff and the Subclass for damages in amounts to be proven at trial, treble damages for willful and knowing violations, punitive damages, and attorneys' fees and costs, as well as any other remedies the Court may deem appropriate under the Alabama DTPA.

**C.     Claims Brought on Behalf of the California Subclass**

**COUNT VI**

**VIOLATIONS OF THE CALIFORNIA
UNFAIR COMPETITION LAW
(CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.*)**

152.     Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

153.     Plaintiff Roeder bring this Count on behalf of the California Subclass against Defendants.

154.     California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq., proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Defendants have engaged in unfair or deceptive acts or practices that violated the UCL, as described above and below, by, among other things, representing that the Samsung Devices have characteristics, uses, benefits, and qualities which they do not have; representing that the Samsung Devices are of a particular standard, quality, and grade when they are not; advertising the Samsung Devices with the intent not to sell them as advertised; and representing that the subject of a transaction involving

the Samsung Devices has been supplied in accordance with a previous representation when it has not.

155.    In the course of Samsung's business, it willfully failed to disclose and actively concealed that the smartphone was defective, such that normal use of the Samsung Devices would be with performance far lower than advertised and represented from benchmark tests. Particularly in light of Samsung's advertising campaign, a reasonable American consumer would expect the Samsung Devices to have high performance running every day apps. Accordingly, Samsung engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Samsung Devices.

156.    In purchasing or leasing the Samsung Devices, Plaintiff and Subclass members were deceived by Samsung's failure to disclose that normal use of the Samsung Devices would be at speed and performance levels far below that of the benchmark tests.

157.    Plaintiff and the Subclass members reasonably relied upon Samsung's false misrepresentations. They had no way of knowing that Samsung's representations were false and gravely misleading. As alleged herein, Samsung engaged in extremely sophisticated methods of deception. Plaintiff and the Subclass members did not, and could not, unravel Samsung's deception on their own, as Plaintiff and Subclass members were not aware of the defective nature of the Samsung Devices prior to purchase.

158.    Samsung's actions as set forth above occurred in the conduct of trade or commerce.

159.    Samsung's deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

160.    Samsung intentionally and knowingly misrepresented material facts regarding the Samsung Devices with intent to mislead Plaintiff and the Subclass members.

161.    Samsung knew or should have known that its conduct violated California law regarding unfair or deceptive acts in trade or commerce.

162.    Samsung owed Plaintiff and Subclass members a duty to disclose the truth about the Defect because Defendant:

   a.    Possessed exclusive knowledge of the design of the Samsung Devices and the Defect;

   b.    Intentionally concealed the foregoing from Plaintiff and the Subclass members; and/or

   c.    Made incomplete representations regarding the quality of the Samsung Devices, while purposefully withholding material facts from Plaintiff and the Subclass members that contradicted these representations.

163.    Due to its specific and superior knowledge that the Samsung Devices were cheating on the benchmark tests, its false representations regarding the quality of the Samsung Devices, and Plaintiff's and Subclass members' reliance on these material representations, Samsung had a duty to disclose to Plaintiff and Subclass members that the Samsung Devices were defective, that Samsung Devices do not have the expected performance over other smartphones, and that the GOS app was throttling every day apps. Having volunteered to provide information to Plaintiff and Subclass members, Samsung had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Samsung Devices purchased or leased by Plaintiff and Subclass members. Performance is a material concern to smartphone consumers. Samsung represented to Plaintiff and Subclass

members that they were purchasing smartphones that were free from defect, when in fact the smartphones were defective.

164.    Samsung's conduct proximately caused injuries to Plaintiff and the Subclass members.

165.    Plaintiff and the Subclass members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Samsung's conduct, Plaintiff and the Subclass members overpaid for their Samsung Devices and did not receive the benefit of their bargain, and their Samsung Devices have suffered a diminution in value. These injuries are the direct and natural consequence of Samsung's misrepresentations and omissions.

166.    Samsung's unlawful acts and practices complained of herein affect the public interest as their actions offend public policy and are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

167.    As a direct and proximate result of Samsung's violations of the UCL, Plaintiff and the Subclass members have suffered injury-in-fact and/or actual damage.

168.    Defendants have been unjustly enriched and should be required to make restitution to Plaintiff and members of the California Subclass pursuant to §§ 17203 and 17204 of the Business & Professions Code. Plaintiff and the California Subclass also seek injunctive relief as deemed appropriate by the Court.

## **COUNT VII**

### **VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT (CAL. CIV. CODE §§ 1750, *ET SEQ.*)**

169.    Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

170.    Plaintiff Roeder brings this Count on behalf of the California Subclass against Defendants.

171.     Plaintiff and other members of the Subclass are "consumers" as defined in Cal. Civ. Code § 1761(d), and Plaintiff, the other Subclass members, and Defendants are "persons" as defined in Cal. Civ. Code § 1761(c).

172.     The Samsung Devices are "goods" as defined in Cal. Civ. Code § 1761(a).

173.     California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, et seq., proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

174.     Samsung's conduct as described herein was and is in violation of the CLRA. Samsung's conduct violates at least the following enumerated CLRA provisions:

   i.     Cal. Civ. Code § 1770(a)(5): Representing that the Samsung Devices have sponsorship, approval, characteristics, uses, benefits or quantities that they do not have.

   ii.    Cal. Civ. Code § 1770(a)(7): Representing that the Samsung Devices are of a particular standard, quality, or grade if they are of another.

   iii.   Cal. Civ. Code § 1770(a)(9): Advertising the Samsung Devices with intent not to sell them as advertised.

   iv.    Cal. Civ. Code § 1770(a)(16): Representing that the subject of a transaction involving the Samsung Devices has been supplied in accordance with a previous representation when it has not.

175.     In the course of Samsung's business, it willfully failed to disclose and actively concealed that the smartphone was defective, such that normal use of the Samsung Devices would be at performance levels far below the benchmark testing results. Particularly in light of Samsung's

advertising campaign, a reasonable American consumer would expect the Samsung Devices to operate every day apps at the speeds represented by the benchmark tests. Accordingly, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Samsung Devices.

176.   In purchasing or leasing the Samsung Devices, Plaintiff and Subclass members were deceived by Samsung's failure to disclose that normal use of the Samsung Devices would be at speeds far below the benchmark test results.

177.   Plaintiff and the Subclass members reasonably relied upon Samsung's false misrepresentations. They had no way of knowing that Samsung's representations were false and gravely misleading. As alleged herein, Samsung engaged in extremely sophisticated methods of deception. Plaintiff and the Subclass members did not, and could not, unravel Samsung's deception on their own, as Plaintiff and Subclass members were not aware of the defective nature of the Samsung Devices prior to purchase.

178.   Samsung's actions as set forth above occurred in the conduct of trade or commerce.

179.   Samsung's deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

180.   Defendants intentionally and knowingly misrepresented material facts regarding the Samsung Devices with intent to mislead Plaintiff and the Subclass members.

181.   Defendants knew or should have known that its conduct violated California law regarding unfair or deceptive acts in trade or commerce.

182.    Defendants owed Plaintiff and Subclass members a duty to disclose the truth about the Defect because Defendants:

      a.    Possessed exclusive knowledge of the design of the Samsung Devices and the use of the GOS app to cheat the benchmark tests;

      b.    Intentionally concealed the foregoing from Plaintiff and the Subclass members; and/or

      c.    Made incomplete representations regarding the performance of the Samsung Devices, while purposefully withholding material facts from Plaintiff and the Subclass members that contradicted these representations.

183.    Due to its specific and superior knowledge that the Samsung Devices were cheating the benchmark tests, its false representations regarding the performance of the Samsung Devices, and Plaintiff's and Subclass members' reliance on these material representations, Defendants had a duty to disclose to Plaintiff and Subclass members that the Samsung Devices were defective, that Samsung Devices do not have the expected performance over other smartphones, that the GOS app was designed and intended to result in fraudulent benchmark tests. Having volunteered to provide information to Plaintiff and Subclass members, Defendants had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Samsung Devices purchased or leased by Plaintiff and Subclass members. Performance is a material concern to smartphone consumers. Defendants represented to Plaintiff and Subclass members that they were purchasing smartphones that were free from defect, when in fact the smartphones were defective.

184.    Samsung's conduct proximately caused injuries to Plaintiff and the Subclass members.

185.     Plaintiff and the Subclass members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Samsung's conduct, Plaintiff and the Subclass members overpaid for their Samsung Devices and did not receive the benefit of their bargain, and their Samsung Devices have suffered a diminution in value. These injuries are the direct and natural consequence of Samsung's misrepresentations and omissions.

186.     Samsung's unlawful acts and practices complained of herein affect the public interest as their actions offend public policy and are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

187.     As a direct and proximate result of Samsung's violations of the CLRA, Plaintiff and the Subclass members have suffered injury-in-fact and/or actual damage.

188.     Plaintiff and the Subclass are entitled to recover actual and punitive damages under the CLRA pursuant to Civil Code § 1780(a), and an additional award of up to $5,000 to each Plaintiff and any class member who is a "senior citizen," as well as any other remedies the Court may deem appropriate under the CLRA. On April 8, 2022, Plaintiff and the Subclass provided Defendants with notice of its violations of the CLRA pursuant to Cal. Civ. Code § 1782(a).

## COUNT VIII

### VIOLATIONS OF THE CALIFORNIA
### FALSE ADVERTISING LAW
### (CAL. BUS. & PROF. CODE §§ 17500, *ET SEQ.*)

189.     Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

190.     Plaintiff Roeder brings this Count on behalf of the California Subclass against Defendants.

191.     Defendants have benefitted from intentionally selling and leasing at an unjust profit defective Samsung Devices at artificially inflated prices due to the cheating of benchmark tests, and Plaintiff and other California Subclass members overpaid for their Samsung Devices.

192.    Defendants publicly disseminated advertising and promotional material that was designed and intended to convey to the public that the Samsung Devices were capable of operating at high speeds with long battery life, and would operate as consumers would expect the Samsung Devices to operate.

193.    Defendants were aware of the Defect at the time Plaintiff and the California Subclass purchased or leased the Samsung Devices and it intentionally designed the GOS app to defraud consumers about the actual speed and performance of the Samsung Devices.

194.    Defendants publicly disseminated advertising and promotional material that was designed and intended to convey to the public that the Samsung Devices were faster and had better performance than they actually had.

195.    However, Defendants intentionally made representations in its advertisements and, due to issues it was aware of, did not sell the Samsung Devices that conformed to the representations and promises in the publicly disseminated advertisements.

196.    Defendants unjustly received and retained benefits from Plaintiff and the other California Subclass members.

197.    It is inequitable and unconscionable for Defendants to retain these benefits.

198.    Because Defendants wrongfully concealed their misconduct, Plaintiff and California Subclass members were not aware of the facts concerning the Samsung Devices and did not benefit from Samsung's misconduct.

199.    Defendants knowingly accepted the unjust benefits of its wrongful conduct.

200.    Defendants had notice of conduct as alleged herein.

201.    As a result of Samsung's misconduct, Plaintiff and the California Subclass suffered an injury-in-fact and lost money and/or property in an amount to be proven at trial.

**D.      Claims Brought on Behalf of the Florida Subclass**

<u>COUNT IX</u>

**VIOLATIONS OF THE FLORIDA DECEPTIVE
AND UNFAIR TRADE PRACTICES ACT
(FLA. STAT. § 501.201, *ET SEQ.*)**

202.     Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

203.     Plaintiff Hamilton brings this Count on behalf of the Florida Subclass against Samsung.

204.     Plaintiff and other members of the Subclass are "consumers" as defined by the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). Fla. Stat. § 501.203(7).

205.     Samsung engaged in "trade or commerce" as defined by Fla. Stat. § 501.203(8).

206.     The sale of the smartphones to Plaintiff and other Florida Subclass members was a "consumer transaction" as defined by Fla. Stat. § 1345.01.

207.     The Florida Deceptive and Unfair Trade Practices Act prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce…" Fla. Stat. § 501.204(1). Samsung has engaged in unfair or deceptive acts or practices that violated the FDUTPA, as described above and below, by, among other things, representing that the Samsung Devices have characteristics, uses, benefits, and qualities which they do not have; representing that the Samsung Devices are of a particular standard, quality, and grade when they are not; advertising the Samsung Devices with the intent not to sell them as advertised; and representing that the subject of a transaction involving the Samsung Devices has been supplied in accordance with a previous representation when it has not.

208.     In the course of Samsung's business, it willfully failed to disclose and actively concealed that the smartphone was defective, such that normal use of the Samsung Devices would be at performance levels far below its benchmark tests. Particularly in light of Samsung's

advertising campaign, a reasonable American consumer would expect the Samsung Devices to have high performance consistent with the benchmark tests. Accordingly, Samsung engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Samsung Devices.

209.    In purchasing or leasing the Samsung Devices, Plaintiff and Subclass members were deceived by Samsung's failure to disclose that normal use of the Samsung Devices would be at performance levels far below the benchmark test results.

210.    Plaintiff and the Subclass members reasonably relied upon Samsung's false misrepresentations. They had no way of knowing that Samsung's representations were false and gravely misleading. As alleged herein, Samsung engaged in extremely sophisticated methods of deception. Plaintiff and the Subclass members did not, and could not, unravel Samsung's deception on their own, as Plaintiff and Subclass members were not aware of the defective nature of the Samsung Devices prior to purchase.

211.    Samsung's actions as set forth above occurred in the conduct of trade or commerce.

212.    Samsung's deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

213.    Defendants intentionally and knowingly misrepresented material facts regarding the Samsung Devices with intent to mislead Plaintiff and the Subclass members.

214.    Defendants knew or should have known that its conduct violated Florida law regarding unfair or deceptive acts in trade or commerce.

215.     Defendants owed Plaintiff and Subclass members a duty to disclose the truth about the Defect because Defendant:

a.     Possessed exclusive knowledge of the design of the Samsung Devices and the use of the GOS app to cheat on benchmark tests;

b.     Intentionally concealed the foregoing from Plaintiff and the Subclass members; and/or

c.     Made incomplete representations regarding the performance of the Samsung Devices, while purposefully withholding material facts from Plaintiff and the Subclass members that contradicted these representations.

216.     Due to its specific and superior knowledge that the Samsung Devices were cheating the benchmark tests, its false representations regarding the performance of the Samsung Devices, and Plaintiff's and Subclass members' reliance on these material representations, Samsung had a duty to disclose to Plaintiff and Subclass members that the Samsung Devices were defective, that Samsung Devices do not have the expected performance over other smartphones and that the GOS app would throttle the speed and performance of every day apps. Having volunteered to provide information to Plaintiff and Subclass members, Samsung had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Samsung Devices purchased or leased by Plaintiff and Subclass members. Performance is a material concern to smartphone consumers. Samsung represented to Plaintiff and Subclass members that they were purchasing smartphones that were free from defect, when in fact the smartphones were defective.

217.     Samsung's conduct proximately caused injuries to Plaintiff and the Subclass members.

218.    Plaintiff and the Subclass members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Samsung's conduct, Plaintiff and the Subclass members overpaid for their Samsung Devices and did not receive the benefit of their bargain, and their Samsung Devices have suffered a diminution in value. These injuries are the direct and natural consequence of Samsung's misrepresentations and omissions.

219.    Samsung's unlawful acts and practices complained of herein affect the public interest as their actions offend public policy and are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

220.    As a direct and proximate result of Samsung's violations of the FDUTPA, Plaintiff and the Subclass members have suffered injury-in-fact and/or actual damage.

221.    Pursuant to the FDUTPA, Samsung is liable to Plaintiff and the Subclass for damages in amounts to be proven at trial, treble damages for willful and knowing violations, punitive damages, and attorneys' fees and costs, as well as any other remedies the Court may deem appropriate under the FDUTPA.

**E.    Claims Brought on Behalf of the Illinois Subclass**

## COUNT X

### VIOLATIONS OF THE ILLINOIS CONSUMER
### FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT
### (815 ILCS 505/1, *ET SEQ.*)

222.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

223.    Plaintiff Rehkember brings this Count on behalf of the Illinois Subclass against Samsung.

224.    Plaintiff, and other members of the Subclass, are "consumers" as that term is defined in 815 ILCS 505/1(e).

225.    Samsung is a "person" within the meaning of 815 ILCS 505/1(c).

226.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact … in the conduct of trade or commerce … whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2. Samsung has engaged in unfair or deceptive acts or practices that violated the Illinois CFA, as described above and below, by, among other things, representing that the Samsung Devices have characteristics, uses, benefits, and qualities which they do not have; representing that the Samsung Devices are of a particular standard, quality, and grade when they are not; advertising the Samsung Devices with the intent not to sell them as advertised; and representing that the subject of a transaction involving the Samsung Devices has been supplied in accordance with a previous representation when it has not.

227.    In the course of Samsung's business, it willfully failed to disclose and actively concealed that the smartphone was defective, such that normal use of the Samsung Devices would be at performance levels far below its benchmark tests. Particularly in light of Samsung's advertising campaign, a reasonable American consumer would expect the Samsung Devices to have performance levels consistent with their benchmark tests. Accordingly, Samsung engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Samsung Devices.

228.    In purchasing or leasing the Samsung Devices, Plaintiff and Subclass members were deceived by Samsung's failure to disclose that normal use of the Samsung Devices would be at speeds far below the benchmark test results.

229.    Plaintiff and the Subclass members reasonably relied upon Samsung's false misrepresentations. They had no way of knowing that Samsung's representations were false and gravely misleading. As alleged herein, Samsung engaged in extremely sophisticated methods of deception. Plaintiff and the Subclass members did not, and could not, unravel Samsung's deception on their own, as Plaintiff and Subclass members were not aware of the defective nature of the Samsung Devices prior to purchase.

230.    Samsung's actions as set forth above occurred in the conduct of trade or commerce.

231.    Samsung's deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

232.    Samsung intentionally and knowingly misrepresented material facts regarding the Samsung Devices with intent to mislead Plaintiff and the Subclass members.

233.    Samsung knew or should have known that its conduct violated Illinois law regarding unfair or deceptive acts in trade or commerce.

234.    Samsung owed Plaintiff and Subclass members a duty to disclose the truth about the Defect because Defendant:

      a.    Possessed exclusive knowledge of the design of the Samsung Devices and the use of the GOS app to cheat benchmark tests;

      b.    Intentionally concealed the foregoing from Plaintiff and the Subclass members; and/or

c.    Made incomplete representations regarding the quality of the Samsung Devices, while purposefully withholding material facts from Plaintiff and the Subclass members that contradicted these representations.

235.    Due to its specific and superior knowledge that it was cheating the benchmark tests, its false representations regarding the performance of the Samsung Devices, and Plaintiff's and Subclass members' reliance on these material representations, Samsung had a duty to disclose to Plaintiff and Subclass members that the Samsung Devices were defective, that Samsung Devices do not have the expected performance over other smartphones, and that the GOS app was throttling the speed of every day apps. Having volunteered to provide information to Plaintiff and Subclass members, Samsung had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Samsung Devices purchased or leased by Plaintiff and Subclass members. Performance is a material concern to smartphone consumers. Samsung represented to Plaintiff and Subclass members that they were purchasing smartphones that were free from defect, when in fact the smartphones were defective.

236.    Samsung's conduct proximately caused injuries to Plaintiff and the Subclass members.

237.    Plaintiff and the Subclass members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Samsung's conduct, Plaintiff and the Subclass members overpaid for their Samsung Devices and did not receive the benefit of their bargain, and their Samsung Devices have suffered a diminution in value. These injuries are the direct and natural consequence of Samsung's misrepresentations and omissions.

238. Samsung's unlawful acts and practices complained of herein affect the public interest as their actions offend public policy and are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

239. As a direct and proximate result of Samsung's violations of the Illinois CFA, Plaintiff and the Subclass members have suffered injury-in-fact and/or actual damage.

240. Pursuant to the Illinois CFA, Samsung is liable to Plaintiff and the Subclass for damages in amounts to be proven at trial, treble damages for willful and knowing violations, punitive damages, and attorneys' fees and costs, as well as any other remedies the Court may deem appropriate under the Illinois CFA. Plaintiff will mail a copy of the Complaint to the Attorney General of the State of Illinois in accordance with 815 ILCS § 505/10 a (d).

**F.    Claims Brought on Behalf of the Iowa Subclass**

<u>**COUNT XI**</u>

**VIOLATION OF IOWA PRIVATE RIGHT
OF ACTION FOR CONSUMER FRAUDS ACT
IOWA CODE § 714H.1, *ET SEQ.***

241. Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

242. Plaintiff Brumback brings this Count on behalf of the Iowa Subclass against Samsung.

243. The Iowa Private Right of Action for Consumer Frauds Act, Iowa Code § 714H.3, provides in pertinent part:

> A person shall not engage in a practice or act the person knows or reasonably should know is [a] deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement, sale, or lease of consumer merchandise…

244.     Under the Iowa Private Right of Action for Consumer Frauds Act, actual damages "means all compensatory damages proximately caused by the prohibited practice or act that are reasonably ascertainable in amount" and " [a] consumer who suffers an ascertainable loss of money or property as the result of a prohibited practice or act in violation of this chapter may bring an action at law to recover actual damages," equitable relief, including a temporary or permanent injunctive relief, and reasonable attorney's fees.

245.     Defendants engaged in a deceptive consumer-oriented act by: (1) creating and installing on the Samsung Devices the GOS app, which caused the Devices to achieve benchmark test results that overstated the actual performance of the Devices; and (2) falsely representing in advertising, on its website, the product container, product manual and/or inserts that the Samsung Devices were capable of speeds and performance that were only achieved by cheating on the benchmark tests.

246.     These alleged unfair practices, deceptions, fraud, false pretenses, false promises, or misrepresentations related to a material fact or facts.

247.     Plaintiff Brumback and the Iowa Subclass have sustained ascertainable losses of money, and are entitled to actual damages and appropriate injunctive relief, as the result of a prohibited practice or actions. In addition, Plaintiff and the Iowa Subclass shall show by a preponderance of clear, convincing, and satisfactory evidence that the prohibited practice or act in violation in willful and wanton disregard for the rights or safety of another, entitling them to statutory damages up to three times the amount of actual damages may be awarded to a prevailing consumer.

**G.      Claims Brought on Behalf of the Massachusetts Subclass**

**COUNT XII**

**VIOLATION OF THE MASSACHUSETTS CONSUMER PROTECTION LAW
MASS. GEN. LAWS, CH. 93A
(PLAINTIFF INDIVIDUALLY AND ON BEHALF OF
THE MASSACHUSETTS SUBCLASS)**

248.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

249.    Plaintiff McAvoy brings this Count on behalf of the Massachusetts Subclass against Samsung.

250.    Plaintiff provided a written demand for relief to Samsung pursuant to Mass. Gen. Laws, Ch. 93A § 9(3).

251.    Plaintiff and Massachusetts Subclass Members were at all relevant times "persons" as defined in Mass. Gen. Law, Ch. 93A.

252.    Samsung was at all relevant times engaged in "trade" or "commerce" through its marketing, advertising, distribution, and sale of the Samsung Devices, as defined in Mass. Gen. Law, Ch. 93A.

253.    The Samsung Devices at issue constitute tangible property under Mass. Gen. Law, Ch. 93A.

254.    Samsung's foregoing unfair methods of competition and unfair or deceptive acts or practices, including its omissions, were and are committed in its course of trade or commerce, directed at consumers, affect the public interest, and injured Plaintiff and Massachusetts Subclass Members.

255.    Samsung's foregoing unfair methods of competition and unfair or deceptive acts or practices, including its omissions, were material, in part, because they concerned an essential part of the Samsung Devices' intended use. Samsung omitted material facts regarding the actual

- 55 -

performance (or lack thereof) of the Samsung Devices by failing to disclose the use of the GOS app to cheat benchmark tests. Rather than disclose this information, Samsung marketed and labeled the Samsung Devices as having high speed and performance with long battery life, when in fact it throttled performance of every day apps in order to obtain safe operating temperatures and expected battery life.

256.    Samsung intended Plaintiff and Massachusetts Subclass Members to rely upon its misrepresentations regarding the Samsung Devices, including that the benchmark tests accurately reported the performance of the devices for use with every day apps.

257.    Samsung did not disclose this information to consumers.

258.    Samsung's foregoing unfair methods of competition and unfair or deceptive acts or practices, including its omissions, were and are violations of the Massachusetts Consumer Protection Law, Mass. Gen. Laws, Ch. 93A, in that:

a.    Samsung manufactured, labeled, packaged, marketed, advertised, distributed, and/or sold the Samsung Devices as having high speed and long battery life that it knew it did not actually achieve;

b.    Samsung knew that the its use of the GOS app to cheat on benchmark tests was unknown to and would not be easily discovered by Plaintiff and Massachusetts Subclass Members, and would defeat their ordinary, foreseeable and reasonable expectations concerning the performance of the Samsung Devices;

c.    Plaintiff and Massachusetts Subclass Members were deceived by Samsung's failure to disclose and could not discover the actual performance of the Samsung Devices was far below that obtained in the benchmark tests;

d.   Samsung manufactured, labeled, packaged, marketed, advertised, distributed, and/or sold the Samsung Devices as able to operate and the levels revealed in the benchmark tests, when it knew that the Samsung Devices actually throttled speeds for every day apps and did not achieve the benchmark performance; and

e.   Samsung's unfair methods of competition and unfair or deceptive acts or practices, including its omissions, injured Plaintiff and Massachusetts Subclass Members, and had—and still has—the potential to injure members of the public at-large.

259.   Plaintiff and Massachusetts Subclass Members suffered damages when they purchased the Samsung Devices. Samsung's unfair methods of competition and unfair or deceptive acts or practices, including its omissions, caused actual damages to Plaintiff and the Massachusetts Subclass Members who were unaware that the Samsung Devices were cheating on benchmark tests.

260.   Samsung's unfair methods of competition and unfair or deceptive acts or practices, including its omissions, were likely to deceive, and did deceive, consumers acting reasonably under the circumstances.

261.   Consumers, including Plaintiff and Massachusetts Subclass Members, would not have purchased the Samsung Devices had they known about the actual performance of the Devices for use with every day apps and that the GOS app was intentionally throttling the performance of the apps that they regularly used.

262.   As a direct and proximate result of Samsung's unfair methods of competition and unfair or deceptive acts or practices, including its omissions, Plaintiff and Massachusetts Subclass

Members have been damaged as alleged herein, and are entitled to recover actual damages to the extent permitted by law, including class action rules, in an amount to be proven at trial.

263.    Samsung had actual notice of its unfair methods of competition and unfair or deceptive acts or practices, including its omissions, through its creation and use of the GOS app to hide the Defect that renders the Samsung Devices far less capable that Samsung represents and its cheated benchmark tests would suggest.

264.    In addition, Plaintiff and Massachusetts Subclass Members seek equitable and injunctive relief against Samsung on terms that the Court considers reasonable, and reasonable attorneys' fees and costs.

**H.    Claims Brought on Behalf of the South Carolina Subclass**

**COUNT XIII**

**VIOLATIONS OF THE SOUTH CAROLINA
UNFAIR TRADE PRACTICES ACT
(S.C. CODE ANN. §§ 39-5-10, *ET SEQ.*)**

265.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

266.    Plaintiff Ryder brings this Count on behalf of the South Carolina Subclass against Samsung.

267.    Plaintiff, other members of the Subclass, and Samsung are "persons" within the meaning of the S.C. Code Ann. § 39-5-10(a).

268.    Samsung engaged in "trade" or "commerce" under S.C. Code Ann. § 39-5-10(b).

269.    The South Carolina Unfair Trade Practices Act ("South Carolina UTPA") broadly prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C. Code Ann. § 39-5-20(a). Samsung has engaged in unfair or deceptive acts or practices that violated S.C. Code Ann. § 39-5-20(a), as described above and below, by, among other things, representing that the Samsung Devices have characteristics, uses,

benefits, and qualities which they do not have; representing that the Samsung Devices are of a particular standard, quality, and grade when they are not; advertising the Samsung Devices with the intent not to sell them as advertised; and representing that the subject of a transaction involving the Samsung Devices has been supplied in accordance with a previous representation when it has not.

270.    In the course of Samsung's business, it willfully failed to disclose and actively concealed that the smartphone was defective, such that normal use of the Samsung Devices would be at performance levels far below the benchmark test results. Particularly in light of Samsung's advertising campaign, a reasonable American consumer would expect the Samsung Devices to have high performance levels consistent with the benchmark test results. Accordingly, Samsung engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Samsung Devices.

271.    In purchasing or leasing the Samsung Devices, Plaintiff and the Subclass members were deceived by Samsung's failure to disclose that normal use of the Samsung Devices would not be at performance levels consistent with the benchmark test results.

272.    Plaintiff and the Subclass members reasonably relied upon Samsung's false misrepresentations. They had no way of knowing that Samsung's representations were false and gravely misleading. As alleged herein, Samsung engaged in extremely sophisticated methods of deception. Plaintiff and the Subclass members did not, and could not, unravel Samsung's deception on their own, as Plaintiff and Subclass members were not aware of the defective nature of the Samsung Devices prior to purchase.

273.   Samsung's actions as set forth above occurred in the conduct of trade or commerce.

274.   Samsung's deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

275.   Samsung intentionally and knowingly misrepresented material facts regarding the Samsung Devices with intent to mislead Plaintiff and the Subclass members.

276.   Samsung knew or should have known that its conduct violated South Carolina law regarding unfair or deceptive acts in trade or commerce.

277.   Samsung owed Plaintiff and Subclass members a duty to disclose the truth about the Defect because Defendant:

   a.   Possessed exclusive knowledge of the design of the Samsung Devices and the use of the GOS app to cheat the benchmark tests;

   b.   Intentionally concealed the foregoing from Plaintiff and the Subclass members; and/or

   c.   Made incomplete representations regarding the quality of the Samsung Devices, while purposefully withholding material facts from Plaintiff and the Subclass members that contradicted these representations.

278.   Due to its specific and superior knowledge that the Samsung Devices were cheating the benchmark tests, its false representations regarding the performance of the Samsung Devices, and Plaintiff's and Subclass members' reliance on these material representations, Samsung had a duty to disclose to Plaintiff and Subclass members that the Samsung Devices were defective, that Samsung Devices do not have the expected performance over other smartphones and that the GOS app was throttling every day apps. Having volunteered to provide information to Plaintiff and Subclass members, Samsung had the duty to disclose not just the partial truth, but the entire truth.

- 60 -

These omitted and concealed facts were material because they directly impact the value of the Samsung Devices purchased or leased by Plaintiff and Subclass members. Performance is a material concern to smartphone consumers. Samsung represented to Plaintiff and Subclass members that they were purchasing smartphones that were free from defect, when in fact the smartphones were defective.

279.    Samsung's conduct proximately caused injuries to Plaintiff and the Subclass members.

280.    Plaintiff and the Subclass members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Samsung's conduct, Plaintiff and the Subclass members overpaid for their Samsung Devices and did not receive the benefit of their bargain, and their Samsung Devices have suffered a diminution in value. These injuries are the direct and natural consequence of Samsung's misrepresentations and omissions.

281.    Defendants' unlawful acts and practices complained of herein affect the public interest as their actions offend public policy and are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

282.    As a direct and proximate result of Samsung's violations of the South Carolina UTPA, Plaintiff and the Subclass members have suffered injury-in-fact and/or actual damage.

283.    Pursuant to S.C. Code Ann. § 39-5-140(a), Samsung is liable to Plaintiff and the Subclass for damages in amounts to be proven at trial, treble damages for willful and knowing violations, punitive damages, and attorneys' fees and costs, as well as any other remedies the Court may deem appropriate under the South Carolina UTPA.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the members of the Nationwide Class, the Alabama Subclass, the California Subclass, the Florida Subclass, the Illinois Subclass,

the Iowa Subclass, the Massachusetts Subclass, and the South Carolina Subclass, respectfully request that the Court certify the proposed Nationwide Class and respective State Subclasses, including designating the named Plaintiffs as representative of the Nationwide Class and the respective State Subclasses and appointing the undersigned as Class Counsel under the applicable provisions of Fed. R. Civ. P. 23, and that the Court enter judgment in their favor and against Defendants including the following relief:

A.      An award of declaratory relief, enjoining Defendants from continuing the unlawful, deceptive, fraudulent, harmful, and unfair business conduct and practices alleged herein;

B.      An award of restitution, compensatory damages, and costs for economic loss and out-of-pocket costs;

C.      An award of punitive and exemplary damages under applicable law;

D.      A determination that Defendants are financially responsible for all Class notices and the administration of class relief;

E.      An award of any applicable statutory or civil penalties;

F.      An order requiring Defendants to pay both pre-judgment and post-judgment interest on any amounts awarded;

G.      An award of reasonable counsel fees, plus reimbursement of reasonable costs, expenses, and disbursements, including reasonable allowances for the fees of experts

H.      Leave to amend this Complaint to conform to the evidence produced in discovery and at trial; and

I.      Any such other and further relief the Court deems just and equitable.

### DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, of all issues so triable.

Dated: April 8, 2022

Respectfully submitted,

*/s/ James E. Cecchi*
James E. Cecchi
Kevin G. Cooper
**CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO P.C.**
5 Becker Farm Road
Roseland, NJ 07068
Telephone: (973) 994-1700
JCecchi@carellabyrne.com
KCooper@carellabyrne.com

Steve W. Berman
Thomas E. Loeser
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Ste. 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com
Email: toml@hbsslaw.com

*Attorneys for Plaintiffs*